UNITED STATES *v.* POST & CO. (No. 840).[1]

DRIED STYPA GRASS AND AVOINE IN A NATURAL STATE.

There might be some difficulty in holding that the sun-dried grasses of the importation are textile grasses, or fibers, or other vegetable substances within the meaning of paragraphs 578 and 630, tariff act of 1909, here relied on by the importer; but the rulings of the Board of General Appraisers and those of the courts, acquiesced in, as these apparently have been by Congress, establish a construction that may not now be departed from.

## United States Court of Customs Appeals, May 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27298 (T. D. 32073).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Frank L. Lawrence,* special attorney, on the brief), for the United States.

Submitted on record by appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

In the month of October, 1910, there was imported at the port of New York a quantity of dried grasses, all of which were dyed with the exception of 10 kilos of avoine or oats and 50 kilos of stypa, which were in a natural state. The collector of customs classified the goods as ornamental grains, leaves, or flowers, and imposed thereon a duty of 60 per cent ad valorem under the provisions of paragraph 438 of the tariff act of 1909, which paragraph is as follows:

438. Feathers and downs of all kinds, including bird skins or parts thereof with the feathers on, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this section, twenty per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, including quilts of down and other manufactures of down, and also dressed and finished birds suitable for millinery ornaments, and artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this section, sixty per centum ad valorem; boas, boutonnieres, wreaths, and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other materials or articles herein mentioned, sixty per centum ad valorem.

The importers protested that the merchandise was not dutiable at 60 per cent ad valorem, and as grounds for their objection to the duties imposed claimed that the dried grasses in a natural state were free of duty either under paragraph 578 or paragraph 630, and that the dried grasses dyed were either free of duty under the said paragraphs or dutiable at 35 per cent ad valorem under paragraph 463. The paragraphs upon which the protest of the importers was based are as follows:

---

[1] Reported in T. D. 32568 (22 Treas. Dec., 932).

*Free list.*

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The articles mentioned in the following paragraphs shall, when imported into the United States, &ast; &ast; &ast; be exempt from duty:

578. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal grass, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for in this section.

630. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not otherwise specially provided for in this section.

463. Manufactures of bone, chip, grass, horn, quills, india rubber, palm leaf, straw, weeds, or whalebone, or of which these substances or any of them is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem; but the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof; sponges made of rubber, forty per centum ad valorem; combs, composed wholly of horn, or composed of horn and metal, fifty per centum ad valorem.

The Board of General Appraisers overruled the protest as to the dried grasses which were dyed, but sustained it as to those which were in a natural state. The Government appealed.

As no appeal was taken by the importing company, the only question presented for consideration is whether dried stypa grass and dried avoïne, a species of oats, both in a natural state, are dutiable at 60 per cent ad valorem as "ornamental &ast; &ast; &ast; fruits, grains, leaves, flowers, and stems or parts thereof," or free of duty as grasses "not dressed or manufactured in any manner." The avoine apparently comes within the category of a grain, but in its natural state the samples in evidence do not justify the conclusion that it is an ornamental grain and much less an ornamental fruit or flower. The stypa grass is ornamental, even in its natural state, but it has no place among fruits, grains, or flowers, as those terms are ordinarily used. Botanically speaking, both the stypa grass and the avoine or oats have stems and leaves, but the stems and leaves are joined together and as parts of a consistent whole they can not for tariff purposes be treated as separate entities. Even if the leaves and stems were distinct articles, dried, undyed, and unmanufactured as they are, they would not be ornamental. For these reasons we are of opinion that the merchandise under discussion is not directly dutiable under the provisions of paragraph 438 of the tariff act now in force. Whether any of the goods might be held dutiable under that paragraph by similitude, the record is not sufficient to enable us to determine, and that point is therefore reserved.

We now come to the consideration of the claim of the importers that the goods are entitled to free entry, and as to that we do not hesitate to say that if it were an original proposition we should have considerable reserve in declaring that sun-dried grasses such as those imported are textile grasses or fibers or other vegetable substances within the meaning of either of the paragraphs relied upon by the importers. We are confronted, however, by the very significant fact

that for more than 20 years sun-dried grasses, and even grains, have been uniformly held by the Board of General Appraisers to be covered by a free-list provision for grasses and fibers which has appeared substantially in the same form in every tariff act from 1890 to date. (See tariff act of 1890, pars. 592, 593, 594, 595, 596, 597; tariff act of 1894, par. 497; tariff act of 1897, par. 566; tariff act of 1909, par. 578.)

This free-list provision was first construed by the Board of General Appraisers in the matter of the protest of John Donat & Co. (T. D. 17150). In that case sun-dried wheat straw, grown especially for ornamental purposes, and cut before the head was perfectly formed, was classified by the collector of customs as a nonenumerated manufactured article, dutiable at 20 per cent ad valorem. The board held that the importation was entitled to free entry under paragraph 497 of the tariff act of 1894, which was as follows:

GRASSES and FIBERS:

497. Istle or Tampico fiber, jute, jute butts, manila, sisal grass, sunn, flax straw, flax not hackled, tow of flax or hemp, hemp not hackled, hemp, flax, jute, and tow wastes, and all other textile grasses or fibrous vegetable substances, unmanufactured or undressed, not specially provided for in this act.

In April, 1898, immature heads and stems of wheat, sun bleached, intended for funeral decorations, were classified by the collector of customs as "ornamental grains," and subjected to a duty of 50 per cent ad valorem under that part of paragraph 425 of the tariff act of 1897, which reads as follows:

425. * * * Dressed and finished birds suitable for millinery ornaments, and artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, * * * fifty per centum ad valorem.

In that case the board remarked that the admission of such merchandise free of duty had been the customs practice since 1890, and held that the heads and stems of wheat in question were not "ornamental grasses," but undressed, unmanufactured, textile grass or fibrous vegetable substances entitled to free entry under the provisions of paragraph 566 of the tariff act of 1897, which paragraph was as follows:

566. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal grass, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for in this act.

These decisions of the board were followed by the case of United States v. Richard, in which it was held by the Circuit Court for the Southern District of New York, Wheeler, District Judge, that natural grass, sun-bleached and used for emblems, was not dutiable as "flowers of all kinds preserved or fresh, suitable for decorative purposes," under paragraph 251 of the tariff act of 1897, but was exempt from duty under the provisions of paragraph 566 hereinbefore set out.

In February, 1900, the Treasury Department formally acquiesced in the Richard case, just cited, and informed the collector of customs at New York that the Attorney General had advised that no further proceedings be had. (T. D. 21984.)

In June, 1900, stems or heads of wheat or straw, sun bleached, but not dressed or manufactured in any manner, and intended for funeral decorations, were again held by the Board of General Appraisers to be covered by paragraph 566 of the free list of the tariff act of 1897, and to be entitled to free entry thereunder. *In re* Donat & Co. (T. D. 22265).

In May, 1903, the Circuit Court for the Eastern District of Pennsylvania, expressly declared that it would follow the decision in the Richard case, and it therefore admitted free of duty under paragraph 566 of the tariff act of 1897 bleached wheat stems, or wheat heads, which had been classified by the collector as "natural flowers of all kinds, preserved or fresh, suitable for decorative purposes." Bayersdorfer *v.* United States (122 Fed. Rep., 968).

Later on this decision was reversed by the Circuit Court of Appeals, Third Circuit, not on the ground, however, that the goods did not fall within the intention of paragraph 566, but on the ground that that paragraph was not set up in the protest. (See United States *v.* Bayersdorfer, 126 Fed. Rep., 732.)

Under the circumstances we do not feel at liberty to set aside rulings of the Board of General Appraisers and the courts which have persisted for so many years, especially as the Treasury Department seems to have acquiesced in the principle of those rulings, and Congress has apparently approved of them by substantially reenacting in all subsequent tariff acts the provisions so interpreted.

The decision of the Board of General Appraisers is *affirmed.*